# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 2 C 1274 | **DATE** | 1/29/2003 |
| **CASE TITLE** | Dean L. Buntrock vs. S.E.C. et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: The defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) is granted. Because we have concluded that we do not have jurisdiction to review the SEC's discretionary action, we need not address the defendants' arguments raised pursuant to FRCP 12(b)(6). [20-1,2] This is a final and appealable order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 0 6 2003 | |
| | Notified counsel by telephone. | | date docketed | 30 |
| ✓ | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TSA | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEAN L. BUNTROCK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES SECURITIES AND ) <br> EXCHANGE COMMISSION, ) <br> HARVEY L. PITT, CYNTHIA A. ) <br> GLASSMAN, and ISAAC C. ) <br> HUNT, JR., ) <br> Defendants. ) | No. 02 C 1274 <br><br> Wayne R. Andersen <br> District Judge |

## MEMORANDUM OPINION AND ORDER

This case is before the Court on the motion of the defendants to dismiss the plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). For the following reasons, the motion to dismiss is granted.

## BACKGROUND

On October 31, 1997, the United States Securities and Exchange Commission ("SEC") initiated an informal investigation to determine whether anyone associated with Waste Management, Inc. had violated federal securities laws in connection with Waste Management's financial statements from 1992 through 1997. In February 1998, Waste Management acknowledged past accounting errors and announced that it would restate its financial statements for the period 1992 through the first three-quarters of 1997 (the "Restatement"). The Restatement acknowledged that Waste Management had overstated its net after-tax income by

1

over $1 billion. The SEC has asserted that the overstatement of earnings resulted in a shareholder loss of $6 billion in market value when the stock price plummeted from $35 to $22 per share.

Since the announcement of the Restatement, the SEC has focused considerable energy on investigating what role certain corporate leaders, including plaintiff Dean Buntrock, played in Waste Management's accounting difficulties. During the investigation, Buntrock and his counsel met with the SEC staff and presented his view of the facts. In September 2001, Buntrock made a "Wells Submission" to the SEC staff indicating that Waste Management was to blame for the improperly restated financial statements and not him individually. Nevertheless, in February 2002, the SEC authorized an enforcement action against Buntrock alleging numerous violations of federal securities laws. One month later, the SEC filed the enforcement action.

However, in the period of time between the authorization of the enforcement action and its actual filing, Buntrock filed the instant lawsuit seeking to enjoin the SEC's prosecution of the enforcement action. The gist of Buntrock's complaint is that the enforcement action has been tainted by alleged ethical violations by members of the SEC staff. Specifically, Buntrock challenges the purported involvement of Charles Niemeier and Robert Herdman in authorizing the enforcement action. According to the complaint, Niemeier was an attorney with Williams & Connolly, who had been hired by the new management team at Waste Management to assist the company's Audit Committee, during the time when the new management team executed a questionably large pre-tax write-off. Robert Herdman was an accountant with Ernst & Young and he also assisted the Audit Committee to execute the pre-tax write-off. Some time later, Niemeier was named the SEC's Chief Accountant, Division of Enforcement and Chief Counsel

of the Divisions's Financial Fraud Task Force and Herdman was appointed Chief Accountant of the SEC. Accordingly, Buntrock contends that Niemeier and Herdman's association with Waste Management's past accounting difficulties necessarily has created an irreparable conflict of interest given their alleged involvement in the prosecution of the present SEC enforcement action.

As was mentioned above, the SEC filed its enforcement action against Buntrock and others on March 26, 2002. *See Securities & Exchange Comm'n v. Buntrock*, 02 C 2180 (March 26, 2002). Accordingly, Buntrock filed an amended complaint in this action seeking an order staying the SEC from prosecuting the enforcement action against him due in large part to the perceived ethical problems raised therein. The SEC subsequently filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. That motion is now fully briefed and ready for decision.

## DISCUSSION

In ruling on a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Szumny v. Am. Gen. Fin., Inc.*, 246 F.3d 1065, 1067 (7th Cir. 2001). The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint. *Weiler v. Household Fin. Corp.*, 101 F.3d 519, 524 n. 1 (7th Cir. 1996). A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations. *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

In his complaint, Buntrock alleges that this Court has jurisdiction over the instant case

pursuant to 28 U.S.C. § 1331, the federal question statute, 28 U.S.C. § 1446, the removal statute, and the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.* With respect to the APA, Buntrock contends that it confers jurisdiction in this case because Section 702 states that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof." 5 U.S.C. § 702. Before we delve into the merits of the motion to dismiss, a brief review of the relevant principles of administrative law is in order.

The APA embodies a presumption in favor of judicial review of an agency action that adversely affects a regulated entity. *See Abbott Labs. v. Gardner*, 387 U.S. 136, 140-41, 87 S.Ct. 1507 (1967); *Schneider Nat'l, Inc. v. Interstate Commerce Comm'n*, 948 F.2d 338, 342 (7th Cir. 1991). However, review of final agency orders is excepted when "agency action [is] committed to agency discretion by law." 5 U.S.C. § 701(a)(2). This exception is very narrow and it applies "in those rare instances where 'statutes are drawn in such broad terms that in a given case there is no law to apply'" *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410, 91 S.Ct. 814 (1971) (citation omitted). Under section 701(a)(2), "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion. In such a case, the statute ('law') can be taken to have 'committed' the decision-making to the agency's judgment absolutely." *Heckler v. Chaney*, 470 U.S. 821, 830, 105 S.Ct. 1649 (1985).

Additionally, section 701(a)(2) "requires careful examination of the statute on which the claim of agency illegality is based." *Webster v. Doe*, 486 U.S. 592, 600, 108 S.Ct. 2047 (1988). In deciding whether Congress intended to commit a particular action to an agency's discretion as

4

a matter of law, we must consider "the statutory language, the statutory structure, the legislative history, and the nature of the agency action." *Singh v. Moyer*, 867 F.2d 1035, 1038 (7th Cir. 1989); *see also Board of Trustees of Knox County (Indiana) Hosp. v. Sullivan*, 965 F.2d 558, 562 (7th Cir. 1992). In this case, we must decide whether a decision to initiate a civil enforcement action against Buntrock was an action that Congress committed to the SEC's discretion as a matter of law. If it was, then this Court does not have jurisdiction to hear the case pursuant to the APA. *See Federal Trade Comm'n v. Standard Oil of California*, 449 U.S. 232, 239, 101 S.Ct. 488 (1980).

Sections 21(a) and 21(d) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78u(a) and (d), give the SEC considerable discretion in determining when and how to investigate possible violations of the statute. *See Securities & Exchange Comm'n v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 745, 104 S.Ct. 2720 (1984). Specifically, section 21(a) states that "[t]he Commission may, *in its discretion*, make such investigations as it deems necessary to determine whether any person has violated, is violating or is about to violate any provision of this title." 15 U.S.C. § 78u(a) (emphasis added). Section 21(d) states that "[w]henever it shall appear to the Commission that any person is engaged or is about to engage in acts or practices constituting a violation of any provision of this title, [or] the rules or regulations thereunder . . . it may *in its discretion* bring an action in the proper district court of the United States . . . to enjoin such acts or practices." 15 U.S.C. § 78u(d) (emphasis added). Moreover, the pertinent law and regulations do not contemplate or provide objective or manageable criteria to review an exercise of discretion by the SEC as to whom and in what manner it investigates alleged violations of federal securities laws. *See Hunter v. Securities & Exchange Comm'n*, 879 F. Supp. 494, 500 (E.D. Pa.

1995); *Treats Int'l Enter., Inc. v. Securities & Exchange Comm'n*, 828 F. Supp. 16, 18 (S.D.N.Y. 1993). Further, the legislative history shows that "Congress endowed the Commission with 'broad powers' to conduct investigations in support of its statutory mandate to protect the public interest through prompt and effective enforcement of the federal securities laws." H. Rep. No. 96-1321, at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 3874, 3878.

Nevertheless, Buntrock has argued, both in his response to the motion to dismiss as well as in his amended complaint, that the SEC's own ethical regulations provide a source of law by which we can review its decision to prosecute this enforcement action. In particular, 17 C.F.R. § 200.66 states in relevant part:

> The power to investigate carries with it the power to defame and destroy. In determining to exercise their investigatory power, members should concern themselves only with the facts known to them and the reasonable inferences from those facts. A member should never suggest, vote for, or participate in an investigation aimed at a particular individual for reasons of animus, prejudice or vindictiveness. The requirements of the particular case alone should induce the exercise of the investigatory power, and no public pronouncement of the pendency of such an investigation should be made in the absence of reasonable evidence that the law has been violated and that the public welfare demands it.

17 C.F.R. § 200.66.

While this is an interesting assertion, we must reject it. A nearly identical argument was raised in *Treats Int'l* and the court in that case found that 17 C.F.R. § 200.66 was insufficient to provide a basis for a review of the SEC's action. In reaching this conclusion, the court stated that the language of Section 200.66 did "little to limit the discretion of the SEC in determining to investigate a particular case; it requires that its discretion be exercised on the facts and in good faith." *Treats Int'l*, 828 F. Supp. at 18. Further, the court noted that the ethical regulation was untenable as a source of judicial review of SEC discretion because "to apply it would require a

6

plenary review of not only the particular facts but such intangibles as the commissioners' experience, the allocation of agency resources, the status of related investigations . . . in clear contravention of Congress' decision to confide the investigative determination to the SEC." *Id.* We agree with and adopt the reasoning of the court in *Treats Int'l*. While we acknowledge that the procedural posture of the two cases is different (in *Treats Int'l* the investigation was ongoing while, in this case, an enforcement action has already been filed), we nevertheless conclude that the SEC's ethical regulation does little to limit the discretion of the SEC in deciding to initiate enforcement actions. Therefore, based on our review of the statute and its very broad grant of investigatory powers to the SEC, we find that the agency's regulations only modestly constrain agency action and they provide no basis by which this Court can review the agency's discretionary decision to file enforcement actions.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) is granted. Because we have concluded that we do not have jurisdiction to review the SEC's discretionary action, we need not address the defendants' arguments raised pursuant to Federal Rule of Civil Procedure 12(b)(6). This is a final and appealable order. This case is terminated.

It is so ordered.

Wayne R. Andersen
United States District Judge

Dated: January 29, 2003